UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANTHONY H.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

19-CV-1256-LJV
DECISION & ORDER

---

On September 17, 2019, the plaintiff, Anthony H. ("Anthony"), brought this action under the Social Security Act. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On May 12, 2020, Anthony moved for judgment on the pleadings, Docket Item 16; on August 11, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 18; and on September 1, 2020, Anthony replied, Docket Item 19.

For the reasons stated below, this Court grants Anthony's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the [Administrative Law Judge ('ALJ')] applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

Anthony argues, among other things, that the ALJ erred in failing to recontact his treating physician, Donald W. Robinson, M.D., before assigning his opinion little weight.

2

Docket Item 16-1 at 14.  This Court agrees that the ALJ erred and, because that error was to Anthony's prejudice, remands the matter to the Commissioner.

When determining a claimant's residual functional capacity ("RFC"), an ALJ must evaluate every medical opinion received.  20 C.F.R. § 416.927(c).  But an ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairments."  *See* 20 C.F.R. § 404.1527(a)(2), (c)(2); *see also Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order).  In fact, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(c)(2).

Before an ALJ may give less-than-controlling weight to a treating source's opinion, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[] (4) whether the physician is a specialist."  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted).  These are the so-called "*Burgess* factors" from *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008).  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source opinion "is a procedural error."  *Id.* at 96 (quoting *Selian v.*

3

*Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).  Here, the ALJ erred when she discounted the opinions of two of Anthony's treating physicians—Dr. Robinson and Nathalie Bousader-Armstrong, M.D.—without explicitly discussing the *Burgess* factors.

The ALJ assigned "some weight" to the opinion of Dr. Bousader-Armstrong, explicitly noting that Dr. Bousader-Armstrong's opinion was that "of a treating professional."  Docket Item 11 at 17-18.  But the ALJ never even acknowledged that Dr. Bousader-Armstrong had treated Anthony from at least 2011 to 2014 and thus failed to "explicitly" consider "the frequency, length, nature, and extent of [Dr. Bousader-Armstrong's] treatment."  *See Greek*, 802 F.3d at 375.  Moreover, while the ALJ said that Dr. Bousader-Armstrong's "opinion more accurately reflects that [Anthony] does have some physical impairments, which could affect his ability to work," Docket Item 11 at 17, she did not address "the amount of medical evidence supporting the opinion" or "the consistency of the opinion with the remaining medical evidence," *see Greek*, 802 F.2d at 375.  Nor did she address whether Dr. Bousader-Armstrong was a specialist.  *See* Docket Item 11 at 17-18.

Likewise, the ALJ failed to discuss any of the *Burgess* factors before assigning "[l]ittle weight" to Dr. Robinson's 2015 opinion.  *See* Docket Item 11 at 17.  Even worse, the ALJ did not even acknowledge Dr. Robinson's 2018 opinion or his years of treatment notes, let alone consider the *Burgess* factors as to them.[3]  *See id.*

---

[3] The Commissioner argues that Dr. Robinson's 2018 opinion was "not an opinion that required a detailed analysis by the ALJ."  Docket Item 18-1 at 14.  A medical opinion "reflect[s] judgments about the nature and severity of [the claimant's] impairment(s), including [] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1).  Although brief, Dr. Robinson's 2018 opinion lists numerous diagnoses, and it followed Dr. Robinson's 2015 opinion that those diagnoses rendered Anthony

4

"Because the ALJ procedurally erred, the question becomes whether 'a searching review of the record assures [this Court] that the substance of the [treating-physician] rule was not traversed'—*i.e.*, whether the record otherwise provides 'good reasons' for [discounting Dr. Robinson's and Dr. Bousader-Armstrong's] opinion[s]." *See Estrella*, 925 F.3d at 96 (alterations and citation omitted); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand where "application of the correct legal principles to the record could lead [only to the same] conclusion"). The Court finds no such assurance here.

First, Dr. Robinson's and Dr. Bousader-Armstrong's opinions were consistent with each other—strong evidence of their validity. Both found that Anthony had anxiety and depression as well as back and leg pain that affected his ability to work. *See* Docket Item 11-1 at 118, 132 (Dr. Robinson's opining Anthony was disabled due to back pain with disc disease, lymphedema,[4] bipolar disorder with anxiety and

---

disabled. *See* Docket Item 11-1 at 118, 132. The 2018 opinion therefore was a medical opinion that the ALJ was required to weigh, especially when considered alongside Dr. Robinson's treatment notes that more thoroughly detailed Anthony's impairments. Indeed, because those treatment notes also "reflect judgments" about Anthony's impairments, they, too, were medical opinions that the ALJ was required to consider. *See* 20 C.F.R. § 404.1527(a)(1).

[4] The ALJ appears to have discounted Anthony's credibility in part because Anthony did not wear compression stockings as prescribed for his lymphedema. *See* Docket Item 11 at 16. Dr. Robinson's treatment notes make clear, however, that Anthony did not wear the compression stockings because he could not afford them. Docket Item 11-1 at 115. Given the remedial purpose of Social Security, *Cruz*, 912 F.2d at 11, "'[i]t flies in the face of the patent purpose of the Social Security Act to deny benefits to someone because he is too poor to obtain treatment that may help him,'" *Lovejoy v. Heckler,* 790 F.2d 1114, 1117 (4th Cir.1986) (quoting *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir.1984)); *see also Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987) ("To a poor person, a medicine that he cannot afford to buy does not exist."). The ALJ therefore erred in finding that Anthony's failure to wear compression stockings meant that his lymphedema was not as severe as he claimed.

depression, obsessive compulsive disorder, suicidal ideations, diastolic heart valve disfunction, carpal tunnel syndrome, and hypertension); Docket Item 10-2 at 448 (Dr. Bousader-Armstrong's finding that Anthony was "[v]ery [l]imited" in his ability to walk, lift, and carry, and "[m]oderately [l]imited" in his ability to stand, sit, push, pull, and climb). Both their opinions also were supported by years of their treatment notes. *See, e.g.*, Docket Item 11-1 at 110-13 (Dr. Robinson's finding low back pain and limited spinal range of motion); *id.* at 115-16 (Dr. Robinson's reporting that Anthony experienced pain in both feet and legs, increased depression, and suicidal thoughts); *id.* at 129 (Dr. Robinson's finding back pain with disc disease and pain in Anthony's left leg); Docket Item 10-2 at 7-8 (Dr. Bousader-Armstrong's finding anxiety, depression, panic attacks, and that Anthony's back pain limited his ability to ambulate); *id.* at 120 (Dr. Bousader-Armstrong's finding chronic back pain, bilateral leg numbness, and pain in feet that was worse with walking); *id.* at 140 (Dr. Bousader-Armstrong's finding leg pain likely caused by back impairments).

Dr. Robinson's and Dr. Bousader-Armstrong's findings also were supported by the treatment notes of other providers. *See, e.g.*, Docket Item 11-1 at 43 (treatment notes from Gregory J. Castiglia, M.D., diagnosing Anthony with lumbago, lumbar radiculopathy, and disc herniation and finding lumbar spine tenderness); *id.* at 47 (treatment notes from Geraci Spine and Sports Medicine finding that standing, walking, bending backwards and sideways, lifting, and rising from sitting aggravated Anthony's

---

*See Lovejoy,* 790 F.2d at 1117 ("[I]t is as erroneous to consider the claimant's failure to seek treatment as a factor in the determination that her impairment is not severe as it would be to reach the ultimate conclusion that the claimant is not disabled because she failed to follow prescribed treatment when that failure is justified by lack of funds.") (citing *Preston v. Heckler*, 769 F.2d 988 (4th Cir.1985)).

pain); Docket Item 10-1 at 408 (treatment notes from Leeland A. Jones, M.D., observing suicidal ideation and bizarre thoughts).

Not only did the ALJ err by not explicitly addressing the *Burgess* factors before discounting the treating physicians' opinions, but she also relied on inappropriate reasons for assigning Dr. Robinson's 2015 opinion little weight. The ALJ discounted Dr. Robinson's 2015 opinion because Dr. Robinson "did not give a functional analysis of the most [Anthony] c[ould] do in terms of performing basic work activities on a sustained basis in a 40-hour workweek [sic]." Docket Item 11 at 17. But whether a medical source opinion is broken down into a function-by-function analysis is *not* one of the factors that the Commissioner considers when deciding the weight given to a treating source opinion. *See* 20 C.F.R. § 404.1527. And even more basically, if the lack of function-by-function analysis in a medical source's record creates a gap in the record, the ALJ must fill that gap by recontacting the source, not simply disregard the opinion to the claimant's detriment. *See Tumpower v. Colvin*, 2015 WL 162991, at *14 (W.D.N.Y. Jan. 13, 2015) (remanding "where the ALJ rejected Dr. Newman's opinion in large part because the ALJ found that it was incomplete [and] the ALJ had a duty to develop the record by re-contacting Dr. Newman for clarification regarding [the] foundation for [the] opinion") (citations omitted).

On a similar note, the ALJ reasoned—as the Commissioner now argues—that Dr. Robinson's opinion that Anthony was "permanently disabled . . . [was] a conclusory statement[] reserved for the Commissioner." *See* Docket Item 11 at 17; *see also* Docket Item 18-1 at 13-14. That, too, was error. Of course, opinions on the ultimate issue reserved to the Commissioner do not bind the ALJ. *See* 20 C.F.R.

7

§ 404.1527(d)(1).  In fact, such opinions are not "medical opinions" as that term of art is used in the social security context.  *See id.*  But an ALJ is not at liberty to reject such opinions, without analyzing what is behind them or recontacting the physicians to have them translate their opinions into more appropriate terms, simply because the opinions reach the ultimate issue.[5]  *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (the fact that the "ultimate finding of whether a claimant is disabled" is "reserved to the [C]ommissioner    . . . means that the Social Security Administration *considers the data that physicians provide* but draws its own conclusions") (emphasis added); *Jakubowski v. Berryhill*, 2017 WL 1082410, at *15 (E.D.N.Y. Mar. 22, 2017) (remanding because the ALJ did not "adequately support[] his decision to accord [] little weight" to treating source opinion that the claimant maintained a "total 100% disability from her occupation," among other specific limitations).  And the ALJ did neither of these things here.

Finally, remand is appropriate because the ALJ's errors prejudiced Anthony.  Having discounted Dr. Robinson's and Dr. Bousader-Armstrong's opinions, the ALJ found that Anthony had the physical RFC "to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except he can occasionally climb ramps or stairs; [and] never climb ladders, ropes[,] or scaffolds."  Docket Item 11 at 15.  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects

---

[5] Even if Dr. Robinson's opinions had been nothing more than legal conclusions or conclusory statements, the ALJ nonetheless would have erred in discounting them without first asking for further interpretation or information from Dr. Robinson.  *See Snell*, 177 F.3d at 134 ("Reserving the ultimate issue of disability to the Commissioner . . . does not exempt administrative decision makers from their obligation . . . to explain why a treating physician's opinions are not being credited.").  After all, an ALJ must have a good reason for rejecting "even laconic" treating-source opinions.  *Schramm v. Colvin*, 2014 WL 4627222, at *3 (W.D.N.Y. Sep. 15, 2014).  And the ALJ provided no good reasons here.

weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b); 416.967(b).  But Dr. Robinson found that Anthony had limited range of motion in his spine and consistent back and leg pain.  And Dr. Bousader-Armstrong specifically found that Anthony was "[v]ery [l]imited" in his ability to walk, lift, and carry and "[m]oderately [l]imited" in his ability to stand, sit, push, pull, bend, and climb.  Docket Item 10-2 at 448.  Their opinions therefore seriously question whether Anthony indeed could perform light work as the RFC contemplates.  That is enough to require remand.  *See Manuel v. Comm'r of Soc. Sec.*, 2020 WL 2703442, at *4 (May 26, 2020) (remanding where the ALJ failed to consider an opinion that "could have resulted in a finding of disability . . . if given weight by the ALJ").

## CONCLUSION

In sum, the ALJ did not explicitly address the *Burgess* factors as to Dr. Robinson's and Dr. Bousader-Armstrong's treating source opinions, gave inappropriate reasons for discounting Dr. Robinson's 2015 opinion, and did not even consider Dr. Robinson's 2018 opinion.  Those errors prejudiced Anthony and therefore require remand.[6]

---

[6] This Court will not reach Anthony's argument that the mental RFC is unsupported by substantial evidence, Docket Item 16-1 at 17, because it "may be affected by the ALJ's treatment of this case on remand," *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015).

The Commissioner's motion for judgment on the pleadings, Docket Item 18, is DENIED, and Anthony's motion for judgment on the pleadings, Docket Item 16, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: March 29, 2021
Buffalo, New York

 */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE